**George G. BLESSITT and Willie Neal, Jr., Plaintiffs-Appellants,**

v.

**RETIREMENT PLAN FOR EMPLOYEES OF DIXIE ENGINE CO., et al., Defendants-Appellees.**

No. 86–8123.

United States Court of Appeals, Eleventh Circuit.

June 1, 1987.

James S. Altman, Richard D. Ellenberg, P.C., Atlanta, Ga., for plaintiffs-appellants.

David M. Leonard, Daniel P. Johnson, Harvey R. Spiegel, Atlanta, Ga., for defendants-appellees.

Before HILL and JOHNSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

HENLEY, Senior Circuit Judge:

George G. Blessitt and Willie Neal, Jr. appeal from the entry of summary judgment in favor of Dixie Engine Co. and J.P. Jung on their claim that appellees violated the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001—1461 (ERISA), and on their claim for attorney's fees. We affirm in part, reverse in part and remand with instructions.

On December 31, 1982 Dixie Engine's retirement plan was terminated. The employees' benefits were calculated and benefit checks were mailed beginning September 30, 1983. Upon receiving his check, Blessitt noticed that his benefits seemed low. After Blessitt brought this to the attention of Dixie Engine, his benefits were

recalculated. Blessitt's check proved to have been $592.85 too low, and Dixie Engine offered to pay the shortfall in exchange for a general release. Blessitt refused.

On August 22, 1984 appellants filed a five-count class action complaint against Dixie Engine alleging violations of ERISA. Count I challenged the method used by Dixie Engine to get the employees to select the form of their benefits. Count II alleged that Dixie Engine used the wrong formula to calculate benefits and that appellants had therefore not received all benefits promised under the plan. Count III alleged that Dixie Engine used incorrect actuarial assumptions in calculating the benefits. Count IV alleged that even under Dixie Engine's method of calculation, Blessitt's benefits were $592.85 too low. Count V charged Dixie Engine with bad faith and asked for attorney's fees. Appellants subsequently dropped Count III.

Upon cross motions for summary judgment, the district court granted summary judgment for Dixie Engine on Count II, granted summary judgment for Blessitt on Counts I and IV, and refused to award any attorney's fees and granted summary judgment for Dixie Engine on Count V.

Appellants challenge the district court's grant of summary judgment in favor of Dixie Engine on Counts II and V. They contend that Dixie Engine used the wrong formula to calculate the benefits of the employees. As a result, they contend that Dixie engine was allowed to receive over $225,000.00 in residual plan assets while the employees were not paid all benefits promised in the plan, all in violation of ERISA. They also argue that the court erred in not awarding them attorney's fees.

Upon termination of a single-employer defined benefit plan, residual assets may revert to the employer if "(A) all liabilities of the plan to participants and their beneficiaries have been satisfied, (B) the [reversion] does not contravene any provision of law, and (C) the plan provides for such a

* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit sitting by designa-

tion.

distribution in these circumstances." 29 U.S.C. § 1344(d)(1). In this case there are no allegations that reversion of assets was unlawful. It is also clear that Dixie Engine's pension plan provided for such a reversion. The dispute rather is over the question whether all liabilities of the plan were paid prior to reversion.

Under Dixie Engine's pension plan, accrued monthly benefits (in the form of an annuity) were calculated as follows:

1. Determination on or subsequent to a participant's normal retirement date:

(a) 15% of the first $650 of participant's average monthly earnings at the determination date plus 20% of average monthly earnings exceeding $650, multiplied by

(b) a fraction, not to exceed 1, the numerator of which is the total number of years of credited service completed and the denominator of which shall be 20.

2. Determination on date prior to participant's normal retirement date:

(a) the amount of the participant's monthly accrued benefit which would have become payable at his normal retirement date had he continued in the employ of the employer and had he continued to earn a monthly salary or wage in the same amount as his average monthly earnings, multiplied by

(b) a fraction, not to exceed 1, the numerator of which is the total years of credited service completed by the participant as of the date of determination, and the denominator of which is the number of years of credited service he would have completed had he continued in employment to his normal retirement date.

Normal retirement date is defined in the plan as the later of ten years of service or age sixty-five.

Upon termination of the plan, Dixie Engine calculated the benefits due employees who had not yet reached normal retirement date by using the second formula above. These employees therefore only received benefits that had accrued up to the date of termination. Appellants contend that these employees were entitled to benefits calculated at normal retirement date using the first formula. This would give these employees their accrued benefits plus the unaccrued benefits to which they would have been entitled at normal retirement age. They therefore argue that Dixie Engine had not satisfied all liabilities under the plan and could not receive the residual assets.

The benefits to be paid upon termination of a plan and their order of priority are set out in § 1344(a) as follows:

(1) First, to that portion of each individual's accured [sic] benefit which is derived from the participant's contributions to the plan which were not mandatory contributions.

(2) Second, to that portion of each individual's accrued benefit which is derived from the participant's mandatory contributions.

(3) Third, in the case of benefits payable as an annuity—

(A) in the case of the benefit of a participant or beneficiary which was in pay status as of the beginning of the 3–year period ending on the termination date of the plan, to each such benefit, based on the provisions of the plan (as in effect during the 5–year period ending on such date) under which such benefit would be the least,

(B) in the case of a participant's or beneficiary's benefit (other than a benefit described in subparagraph (A)) which would have been in pay status as of the beginning of such 3–year period if the participant had retired prior to the beginning of the 3–year period and if his benefits had commenced (in the normal form of annuity under the plan) as of the beginning of such period, to each such benefit based on the provisions of the plan (as in effect during the 5–year period ending on such date) under which such benefit would be the least.

. . . . . .

(4) Fourth—

(A) to all other benefits (if any) of individuals under the plan guaranteed under this subchapter (determined without regard to section 1322b(a) of this title), and

(B) to the additional benefits (if any) which would be determined under subparagraph (A) if section 1322(b)(5) of this title did not apply.

.     .     .     .     .

(5) Fifth, to all other nonforfeitable benefits under the plan.

(6) Sixth, to all other benefits under the plan.

A nonforfeitable benefit is defined as

a benefit for which a participant has satisfied the conditions for entitlement under the plan or the requirements of this subchapter (other than submission of a formal application, retirement, completion of a required waiting period, or death in the case of a benefit which returns all or a portion of a participant's accumulated mandatory employee contributions upon the participant's death), whether or not the benefit may subsequently be reduced or suspended by a plan amendment, an occurrence of any condition, or operation of this chapter or Title 26[.]

29 U.S.C. § 1301(a)(8).

This plan was completely funded by Dixie Engine; therefore priorities §§ 1344(a)(1) and (2) do not apply. Section 1344(a)(3) does not apply because the employees whose benefits are at issue here had not reached their normal retirement dates prior to the termination of the plan. The accrued benefits paid by Dixie Engine to these employees fall under § 1344(a)(4) because they were nonforfeitable and therefore guaranteed by the Pension Benefit Guaranty Corporation (PBGC) under 29 U.S.C. § 1322(a). The remaining unaccrued and forfeitable benefits must either fit under § 1344(a)(6) or else the employees are not entitled to those benefits. In *Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1415–16 (2d Cir.1985), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), the Second Circuit determined that upon termination of a pension plan, employees are entitled to unaccrued forfeitable benefits under § 1344(a)(6). Following an excellent discussion of statutory language, regulations and legislative history, the court concluded that "Congress thus decided not to limit the allocation requirement to accrued benefits but to require that, as long as assets were available, they should be used to meet participants' benefit expectations based upon the Plan's full benefit structure." *Amato,* 773 F.2d at 1416.

We agree with the Second Circuit that with § 1344(a)(6) Congress determined that if assets remain, employees should be paid benefits promised under the plan but not yet accrued before the employer receives the residual assets in the fund. We also note that this is consistent with the theory of construction that "ERISA ... is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984); *see also Rettig v. Pension Benefit Guaranty Corp.,* 744 F.2d 133, 155 n. 54 (D.C.Cir.1984). Therefore, our conclusion is that appellants and the other similarly situated Dixie Engine employees were entitled to receive their unaccrued forfeitable benefits promised under the plan before Dixie Engine was allowed to take any residual assets.

As a result of our conclusion, we find error in the decision of the district court. All of Dixie Engine's employees elected to receive their benefits under the plan in one lump sum payment. 29 C.F.R. Part 2619, Subpart B governs the calculation of benefits for the termination of nontrusteed plans. 29 C.F.R. § 2619.26(b)(1) governs the valuation of lump sum distributions and states:

The value of the lump sum or other alternative form of distribution payable under this section is the present value of the normal form of benefit provided by the plan payable at normal retirement age, determined as of the date of distribution using reasonable actuarial assumptions as to interest and mortality.

Dixie Engine concluded that "the normal form of benefit provided by the plan payable at retirement age" is a form determining phrase rather than a valuation phrase. Therefore, § 2619.26(b)(1) required calculation of the lump sum benefits as if the employees' employment had ended on the date of distribution. Under this interpretation, Dixie Engine calculated the lump sum benefits of its employees using formula 2 of the plan.

Appellants argued to the district court that the proper interpretation of § 2619.-26(b)(1) called for calculation of the lump sum benefits using formula 1 of the plan. They contended that the regulation clearly required that the value of the normal benefit at normal retirement age be calculated and that the resulting figure be reduced to present lump sum value. The district court adopted Dixie Engine's interpretation and found that the benefits had been correctly calculated using formula 2 of the plan.

Section 2619.26(b)(1) is confusing and ambiguous at best. Either interpretation has a legitimate basis in the regulation. Only one interpretation, however, is consistent with what we have said in this opinion. 29 C.F.R. § 2619.21 states that the purpose of Subpart B, including § 2619.26(b)(1), is to establish "rules for calculating the value of a benefit to be paid a participant or beneficiary under a terminating pension plan that is distributing assets...." Having concluded that an employee is entitled, so long as funds remain, to all benefits, including unaccrued and forfeitable benefits, promised under the plan, we interpret "benefit to be paid a participant" to mean the benefit promised by the plan at the normal retirement date.

Calculation of the lump sum value of that benefit under § 2619.26(b)(1) therefore requires the use of formula 1 of the plan in order to determine the value of the monthly benefit that would have been payable to each employee at his normal retirement date. The value of this monthly benefit must then be reduced to its present lump sum value as of the date of distribution. The resulting lump sum is the benefit to which the employee is entitled. However,

further calculations using formula 2 of the plan are necessary in order to determine how much of the benefit is accrued and how much is unaccrued and forfeitable. The priority scheme of 29 U.S.C. § 1344(a) can then be applied to determine how the plan assets will be distributed and whether Dixie Engine will receive any residual assets.

Dixie Engine contends that calculation of the benefits using formula 1 of the plan would be inequitable because younger employees would receive a windfall over older employees. This is not entirely true, however. Most, if not all, of the benefits of older employees are fully accrued. These accrued benefits fall under either priority category 3 or 4, depending on whether the employee has reached normal retirement date, and are guaranteed under ERISA. Younger employees have more unaccrued benefits than older employees. Unaccrued benefits are forfeitable and fit under priority category 6. These benefits are not guaranteed and are not paid if plan assets are insufficient. Moreover, actuarial assumptions make the lump sum payments to older employees more valuable than those to younger employees. The inequity is therefore minimal.

Summary judgment may be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Dixie Engine was not entitled to judgment as a matter of law on Count II, and the district court erred in granting summary judgment for Dixie Engine on that count. Appellants are entitled to judgment as a matter of law on Count II, and summary judgment should be entered accordingly.

■ In Count V appellants alleged bad faith on the part of Dixie Engine and requested attorney's fees. The district court found no evidence of bad faith and refused to award attorney's fees, granting summary judgment on Count V for Dixie Engine. We cannot say that the court's finding of no bad faith in this case was clearly erroneous. See Fed.R.Civ.P. 52(a). A finding of bad faith, however, is not necessary for an

award of attorney's fees under ERISA. 29 U.S.C. § 1132(g)(1) states that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

 The five factors to be considered in awarding attorney's fees under ERISA are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Smith,* 746 F.2d at 590 (quoting *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980)). In light of our ruling on Count II, appellants have now prevailed significantly. The district court therefore may wish to reconsider the issue of attorney's fees and is free to do so.

Dixie Engine contends that Count V only stated a state law claim for attorney's fees due to bad faith. We cannot agree. Count V makes no mention of state or federal law and could therefore include both. In an Order dated September 26, 1985 the district court requested clarification as to whether Count V was a state or federal claim. In a brief filed October 16, 1985, appellants responded that they were entitled in Count V to attorney's fees under either ERISA or state law. Attorney's fees under § 1132(g)(1) clearly can be awarded to appellants under Count V of their complaint, and we remand Count V to the district court for reconsideration in light of this opinion.

In conclusion, the district court's entry of summary judgment in favor of Dixie Engine on Count II is reversed, and the court is instructed to enter summary judgment in favor of appellants on that count. Count V requesting attorney's fees is remanded to the district court for further consideration in light of this opinion. In all other respects, the decision of the district court is affirmed.