**Ida FULMER, Wife of Deceased Miner, Albert Fulmer, Plaintiff,**

v.

**Joseph P. CONNORS; Donald E. Pierce, Jr.; Paul R. Dean; William Miller; and William B. Jordan, Trustees of the United Mine Workers of America 1950 Pension Fund, Defendants.**

No. CV 85–HM–2628–J.

United States District Court,
N.D. Alabama,
Jasper Division.

Aug. 6, 1987.

James C. King, Wilson & King, Jasper, Ala., for plaintiff.

Robert H. Stropp, Patrick K. Nakamuru, Birmingham, Ala., Wm. F. Hanahran, Gerald E. Cole, Jr., UMWA Health and Retirement Funds, Washington, D.C., for defendants.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

Plaintiff Ida Fulmer in her capacity as the surviving widow of deceased coal miner Albert Fulmer commenced this civil action on October 2, 1985 against the Trustees of the United Mine Workers of America ("UMWA") 1950 Pension Plan ("Plan") pursuant to 29 U.S.C. § 1132(a)(1)(B)[1] to recover pension benefits allegedly due her as Albert Fulmer's widow under the terms of the Plan and/or to enforce her rights under the terms of the Plan and/or to clarify her rights to future benefits under the terms of the Plan.[2]  Plaintiff in her amended complaint prayed for the following relief:

a.  A declaratory judgment that Plaintiff is a qualified beneficiary of the United Mine Workers of America 1950 Pension Trust, that Plaintiff meets all eligibility requirements for pension benefits under said trust, and that Plaintiff is entitled to pension benefits under said trust.

b.  That Defendants be ordered to specifically perform their obligations to Plaintiff under said trust.

c.  That the Plaintiff be awarded all pension benefits that would have been payable to her deceased husband prior to the date of his death, and further, that the Plaintiff be awarded all of those benefits to which she would have been entitled from the date of her husband's death up through and including the rest of her life.

d.  That Plaintiff be awarded a reasonable attorney's fee for the services of her attorney in this case.

e.  That cost of Court be taxed against the Defendants.

f.  That the Court issue all such orders, decrees, and judgments as may be necessary in the premises and grant such

---

1.  29 U.S.C. § 1132(a)(1)(B) is a part of the Employee Retirement Income Security Act of 1974 (ERISA) and provides:

> A civil action may be brought—
> (1) by a participant or beneficiary
> (A) ...
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of his plan;

29 U.S.C. § 1132(e)(1) provides that state courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

2.  Plaintiff's original complaint predicated jurisdiction upon diversity of citizenship and the amount in controversy and alleged that plaintiff's claim had its basis upon a certain consent judgment entered in the United States District Court for the District of Columbia in the cases of *Blankenship and Lamb vs. United Mine Workers of America Welfare and Retirement Fund of 1950, et al.*, and two other described civil actions.  The Court granted the Trustees' 12(b)(6) motion to dismiss the original action, granting leave to plaintiff to amend her complaint within ten days pleading her cause of action under ERISA, and struck her jury demand.  On December 18, 1985 plaintiff filed amended complaint stating her claim for relief under 29 U.S.C. § 1132(a)(1)(B).  The amended complaint further correctly identified and designated the Trustees of the UMAW 1950 Pension Plan as defendants.

other, further and additional and more general relief as to which the Plaintiff may be entitled.

By timely answer to plaintiff's amended complaint the defendant Trustees denied that either Albert Fulmer or plaintiff as his surviving widow was eligible for pension benefits under the Plan and alleged that their respective denials of Fulmer's pension application and of plaintiff's application for widow's pension were supported by substantial evidence, were neither arbitrary or capricious and were in conformity with the Plan document.

Following pretrial conference in this action on February 14, 1986 Pretrial Order was entered herein on February 19, 1986. The following portions of the Pretrial order are pertinent to the issues to be resolved by the Court:

2. *Jurisdiction and venue.* Subject matter jurisdiction exists under Section 502(a)(1), (e), and (f) of the Employee Retirement Security Act of 1974 (ERISA). Personal jurisdiction and venue are not contested.

4. *Pleadings.* The following pleadings have been allowed: Complaint (as amended December 16, 1985), Answer and Answer to Amended Complaint.

5. *Statement of case.*

(a) *Agreed summary.* This is an action by Ida Fulmer ("Mrs. Fulmer"), the widow of Albert Fulmer ("Fulmer"), a former coal miner and participant in the United Mine Workers of America ("UMWA") 1950 Pension Trust ("1950 Pension Trust"), to recover pension benefits Plaintiff claims were due Fulmer and to obtain pension benefits on her own behalf. In 1980, Fulmer applied for a pension based on service from the 1950 Pension Trust. The UMWA 1950 Pension Plan ("1950 Pension Plan"), which contains the elibility requirements for a pension from the 1950 Pension Trust, provides, *inter alia,* that a participant "shall be eligible for a pension ... if he has ... completed twenty (20) years of credited service...." Fulmer's pension application was denied on March 4, 1981 because Fulmer did not establish that he

had twenty years of classified credit. He appealed the decision and received a hearing, but the denial was sustained on review.

Fulmer died on December 25, 1983, and on February 13, 1984, Mrs. Fulmer applied to the 1950 Pension Trust for a Widow's Pension. Effective March 1, 1982, the 1950 Pension Plan provided a Widow's Pension to "eligible widows of miners who were receiving a pension under the 1950 Pension Plan (pensioners) at the time of the miner's death". Because Fulmer was not a Pensioner, Mrs. Fulmer's Widow's Pension application was denied. She appealed the denial and received a hearing. Because her eligibility derived from Fulmer's status as a pensioner, the issue on appeal was Fulmer's eligibility for service pension. The hearing officer concluded that Fulmer had not established the requisite twenty years of classified service and that, therefore, Mrs. Fulmer was ineligible for a Widow's Pension. Accordingly, the Trustee sustained the denial of Plaintiff's application.

(b) *Plaintiff's position.* Mrs. Fulmer claims compensatory damages and attorneys' fees and states that as dependent wife of deceased miner, Fulmer, she is qualified and entitled to receive from the Defendants a pension in at least the amount of $150.00 per month or the monthly amount applicable to her, and further claims the amount which would have been applicable to Fulmer from the date of his eligibility up through the date of his death as pension benefits. Mrs. Fulmer claims that on September 12, 1979, the application for pension benefits was filed, and that from that date up through the current date, either she, as dependent widow, or her husband, during his lifetime, would have been entitled to pension benefits and that in the future until the expiration of her life, she would be entitled to the applicable monthly benefit. Mrs. Fulmer contends that the Defendants' decision to withhold the benefits was unlawful, wrongful, arbitrary, capricious and was not consistent with the practices instituted in administering

the 1950 Pension Plan and did not follow prior procedures and precedences regarding awarding the pension. Mrs. Fulmer further claims attorneys' fees and cost. Mrs. Fulmer claims that the Defendants should be ordered to specifically perform their obligations to her under the 1950 Pension Trust.

(c) *Defendants' position.*[3] Defendants, the Trustees of the 1950 Pension Trust, assert, in the first instance that Mrs. Fulmer, in her personal capacity, lacks standing to bring an action claiming pension benefits on behalf of her deceased husband. Even assuming that Plaintiff does have standing, however, the Trustees assert that their decisions to deny Fulmer's and Mrs. Fulmer's pension applications were based on substantial evidence in the record taken as a whole, were neither arbitrary nor capricious, and were in accordance with the plan document.

The above entitled civil action was duly set and scheduled for final bench hearing in the Federal Courthouse in Jasper, Alabama on June 10, 1986, commencing at 9:00 A.M.[4] On that date, time and place the parties through counsel of record appeared before the Court in open court. Plaintiff Ida Fulmer was also present. A federal court reporter was present at the direction of the Court. All proceedings were conducted of record. While no live testimony was presented in the final bench hearing, counsel of record for plaintiff and defendants both presented to the Court detailed statements of their respective positions, discussed the evidence from the administrative record (as supplemented by the documents hereinafter particularized) and argued the applicable standard of review by this Court. Thereupon, the parties through counsel stipulated of record the final submission of the above entitled civil action to the Court upon: (1) the administrative record theretofore filed with the Court;[5] (2) Joint Stipulations filed June 10, 1986; (3) Plaintiff's Exhibit No. 1 (Original of Daisy City Coal Co. Cash Book); and (4) Plaintiff's Exhibit No. 2 (Original of Daisy City Coal Co. Time and Payroll Book). In addition defendants offered the June 9, 1986 Affidavit of Charles A. Sickle given in his capacity as Eligibility Adviser to UMWA in its Office of Beneficiary Eligibility and Payments (concerning an administrative review which he conducted of the pension case of Albert Fulmer in May 1986) which was accepted by the Court for filing with the accompanying of record ruling that it would not consider ¶¶ 6–8, inclusive, of this post-hearing, post-denial "after-the-fact" UMWA Affidavit nor the attachments thereto as a supplement to the administrative record on which the controverted denials of pension benefits were based.[6] Items

---

**3.** Defendants have not argued the issue of plaintiff's alleged lack of standing to bring an action claiming benefits on behalf of her deceased husband. The Court understands the stipulation of the parties to be that if the Court finds and holds the Trustees denial of pension benefits to Albert Fulmer and the subsequent denial by the Trustee's widow's pension benefits to Ida Fulmer to be arbitrary or capricious (a single issue in actuality), the parties will thereupon by agreement determine the amounts of money to be paid to Ida Fulmer *for all past due benefits* and the amount of widow's pension benefits she would be entitled to in the future.

**4.** The Court's Order entered herein on February 19, 1986 sets and schedules the final bench hearing for June 11, 1986, commencing at 9:00 A.M. While no order thereafter entered reschedules the hearing of this case to June 10, 1986, the court reporter's records and notes and the filing dates of the documents presented to the Court at the final bench hearing clearly show that the final bench hearing in this case was held in Jasper on June 10, 1986.

**5.** True and correct copies of the UMWA pension application file of Albert and Ida Fulmer were produced by the defendant Trustees in response to plaintiff's Requests For Production of Documents and were filed with the Court.

**6.** Ida Fulmer's appeal from the UMWA Funds' rejection of her application for widow's pension was denied on August 9, 1985 (A.R. 19–23). This lawsuit was filed on October 2, 1985. By Order entered on February 19, 1986 this case was set for final bench hearing on June 11, 1986. Mr. Sickle's May 1986 review of the "pension case of Albert Fulmer" and his May 19, 1986 Inter-Office Correspondence to Catherine Mitchell, Associate Counsel and counsel of record for the defendant Trustees in this litigation, together with the other attachments to his June 9, 1986 Affidavit, was obviously part of defendants' pre-trial preparation and constitute "after-the-fact" action.

1, 2, 3 and 4 above referenced constitute the agreed and supplemented administrative record in this case.

Also on June 10, 1986 counsel of record for the Trustee defendants submitted to the Court their Memorandum of Points and Authorities (containing Statement of Facts) with attached Exhibit A (National Bituminous Coal Wage Agreement of 1974); attached Exhibit B (United Mine Workers of America 1950 Pension Plan, effective December 6, 1974); and attached photo copies of the unpublished decisions of *Porco v. Huge*, U.S. District Court, District of Columbia, No. 77–0628, September 28, 1977, 96 LRRM 2481; and *Persio v. Combs*, U.S. District Court, Western District of Pennsylvania, Civil Action No. 81–68, Aug. 21, 1981, 2 EBC 2239. Since plaintiff's counsel of record was copied with this referenced memorandum on the morning of the final bench hearing, plaintiff was granted seven days within which to submit reply memorandum and statement of facts. Plaintiff's Memorandum of Points and Authorities (with Statement of Facts) was submitted to the Court on June 17, 1986. The Court construes and treats plaintiff's stated adoption of the portion of defendants' Statement of Facts therein particularized (pages 1–4, inclusive, except the last paragraph of page 4) to be an adoption by plaintiff of defendants' Exhibit A (National Bituminous Coal Wage Agreement of 1974) referred to and described on p. 2 of defendants' Statement of Facts and attached thereto and Exhibit B (UMWA 1950 Pension Plan) referred to and described on p. 3 of that same document and attached thereto. The Court now proceeds to enter in this civil action Memorandum of Decision and contemporaneous final judgment in conformity therewith.

## STATEMENT OF FACTS

Albert Fulmer, now deceased, worked as a coal miner in the bituminous coal industry between 1940 and 1963, serving in the armed forces of the United States from January 15, 1943 to November 3, 1945 (Administrative Record ("A.R.") at pp. 104–110; A.R. at p. 15).

The defendant Trustees are trustees of several trust funds. The word "Funds" as used herein is a collective reference to four irrevocable employee benefit trust funds established under Article XX of the National Bituminous Coal Wage Agreement of 1974, copy of which is submitted as an Exhibit A attachment to defendants' Memorandum of Points and Authorities, pursuant to and in accordance with Section 302(c) of the Labor Management Relations Act, 1947, 29 U.S.C. § 186(c). The individual trust responsible for administering the Fulmers' pension applications is the UMWA 1950 Pension Trust ("1950 Pension Trust"), the successor to the UMWA Welfare and Retirement Fund of 1950. Copy of the 1950 Pension Trust is submitted as an Exhibit B attachment to defendants' Memorandum of Points and Authorities. Defendants Joseph P. Conners, Sr., Donald E. Pierce, Jr., William Miller, William B. Jordan and Paul R. Dean are the present Trustees of the 1950 Pension Trust. The 1950 Pension Trust is also referred to herein as the "1950 Pension Plan," and is an ERISA qualified plan.

Albert Fulmer applied to the defendant Trustees or their predecessors in office for a pension based on service on September 24, 1980. He was 58 years of age at the time, having a birth date of May 10, 1922. (A.R. at 109–110).

The UMWA 1950 Pension Plan provides that, to be eligible for a service pension, a miner in Fulmer's status must have "[a]ttained the age of fifty-five (55) years, and ... completed twenty (20) years of credited service, including the required amount of signatory service as set forth in Article IV(c)(4) ..." (Article II.B of the 1950 Pension Plan, Exhibit B to defendants' Memorandum of Points and Authorities, p. 6). Under Article IV(c)(4) Fulmer needed six (6) years of signatory service (Exhibit B at 23).

Under date of October 3, 1980 the Big Stone Gap Field Service Office of the UMWA Health and Retirement Funds mailed to Albert Fulmer by United States mail a letter of that date in reply to his

pension application (A.R. at 87). This letter reads as follows:

Dear Mr. Fulmer:

We have received your pension application and have asked the Social Security Administration to send us your wage record.

The wage record will help us determine your eligibility for a pension. Unfortunately, it takes about four months for Social Security to furnish a wage record. We will not be able to take any action on your application until we get the wage record. If we need more information about your work history, we will let you know.

Once we receive your wage record from the Social Security Administration, we will start processing your application. This will take some time—how much depends on how complicated your work history is. The number of employers, the completeness of their records, and the types of jobs that you have had all affect processing time. If you are found eligible for a pension, you will receive all payments due you regardless of the date your pension is approved.

Please be assured that your application will be processed as quickly as possible. Your understanding and cooperation are appreciated.

Sincerely,

s/Don C. Bunch, Director

Big Stone Gap Field Service Office

Albert Fulmer was first awarded 15¼ years of credited service by the UMWA review section, all of which was signatory (A.R. at 15–17). Consequently, his application for benefits was denied and he was so notified by UMWA letter dated March 4, 1981 (A.R. at 83).[7] The UMWA Explanation of Pension Credits Awarded or Denied form dated March 4, 1981 for Albert Ful-

mer (A.R. 17) gives the following explanations for the following periods of service:

*1940:* Evidence indicates applicant did not earn a sufficient amount of wages in classified jobs to receive full credit for employment claimed. He must have earned at least $151.50 to receive credit of ¼ year.

*1941:* Evidence indicates applicant did not earn a sufficient amount of wages in classified jobs to receive full credit for employment claimed. He must have earned at least $182.25 to receive credit of ¼ year.

*1942:* Proof of employment with the Daisy City Coal Company was not submitted.

*1945 and 1947:*

Proof of employment with the Daisy City Coal Company was not submitted. (Needs completed Truck Driver Questionnaire)

Pension credit cannot be given for the period applicant served in the military service from 1/15/43 to 11/3/45 because he was not regularly employed in a classified job in the coal industry immediately prior to entry into the service and he did not return to a classified job in the coal industry within 12 months of discharge and was not prevented from doing so by a service-connected sickness or disability.

*1946:* Evidence indicates applicant did not earn a sufficient amount of wages in classified jobs to receive full credit for employment claimed. He must have earned at least $297.75 to receive credit of ¼ year.

*1962:* Evidence indicates applicant did not earn a sufficient amount of wages in classified jobs to receive full credit for employment claimed. He must have earned at least $2,413.00 to receive credit of 1 year.

---

**7.** Albert Fulmer in his initial application for pension benefits claimed, inter alia, one (1) year of creditable service in 1941 as a truck driver for Daisy City Coal Company. On the second page of this application under Section 10 (List all your employment in the coal industry, starting with the company you first worked) he listed his employment by Daisy City Coal Company, Route 3, Birmingham, Alabama, as a truck driver from May 30, 1941 to January __, 1943 (A.R. 109–10). On the UMWA Pension Calculation Worksheet bearing date of February 20, 1981 he was given zero credit for this 1941 year. On this same UMWA document Mr. Fulmer's "Total Coal Earnings on Social Security Wage Records" for 1941 were shown as $101.99 (A.R. at 15–16).

*Mr. Fulmer appealed this decision and at his appeal hearing on June 6, 1981 established an additional 3½ years of credited service for a total of 19¾ years of credited service of which 16¼ years were signatory.* Because the UMWA Hearing Officer concluded that he did not have the requisite service of 20 years by ¼ year, the denial of Mr. Fulmer's pension application was sustained on UMWA review (A.R. at 68–72). The UMWA Decision On Review bearing date of July 31, 1981 reads as follows:

United Mine Workers of America Health and Retirement Funds

Route 2, Box 218–A

Big Stone Gap, Virginia 24219

703–523–3960

Big Stone Gap Field

Service Office

Albert Fulmer

SS: 423–16–8834

1950 & 1974 Pension Trusts

1950 & 1974 Benefit Trusts

### DECISION ON REVIEW

This is the decision on review of the denial of applicant's application for pension benefits under the 1950 Pension Plan. The application for pension was filed in the Big Stone Gap Field Service Office on September 24, 1980 and was denied on March 4, 1981 because applicant failed to establish proof of twenty (20) years of classified service in the coal industry including the required six (6) years of signatory service after May 28, 1946 or ten (10) years of signatory service, including at least three (3) years of signatory service after December 31, 1970.

A pre-hearing conference was held on April 8, 1981 at which time appellant was advised he would need to establish proof of earnings for years not enough were shown on applicant's wage record.

The hearing on this review was held on June 9, 1981 at the District 20 Office at which Mr. & Mrs. Albert Fulmer were present, along with their attorney, Mr. Charles T. Clark.

At the beginning on the hearing, this hearing officer recognized Mr. & Mrs. Fulmer. *I had discussed this case with them in March, 1981 and had taken excerpts from payroll records from the Daisy City Coal Company.* The record of these [excerpt], which I had made were missing from the file. As the hearing officer should have no contact with the file or the decision making on the case *and since had previously advised the Fulmer's they would not receive additional pension credit based on the records of the Daisy City Coal Company,* I offered to withdraw as the hearing officer. Mr. & Mrs. Fulmer and Mr. Clark agreed to continue with the case with me as the hearing officer.

Appellant had been credited with fifteen and one-fourth (15¼) years of classified signatory service. *He had not been given credit for three and three-fourths (3¾) years of service from 1942–1947 because he had not submitted proof of his employment with the Daisy City Coal Company.* Applicant had submitted co-workers statements from Herman Wolfe, Ralph Wolfe and Buster Spruell on which all stated Fulmer worked as a truck driver for this company. *Even though Fulmer did not complete and submit the truck driver's questionnaire sent to him, it is the opinion of this hearing officer that appellant performed classified employment for this company. Appellant will be granted credit for the years on earnings and military service for 1942–1947.*

*This hearing officer again reviewed the partial payroll records from the Daisy City Coal Company. The earnings for Mr. Fulmer, shown on these records did not total to as much as was shown on his Social Security Earnings Record. No additional credit will be granted for the Daisy City Coal Company.*

Appellant submitted a statement of his employment history, with U.S. Steel which the company had completed for the Social Security Administration. This statement shows U.S. Steel paid Mr. Fulmer Workmen's Compensation benefits

for silicosis. The benefits were paid as follows: Lump sum payment amounted to $692.86, representing $2.44 per week for two hundred twenty eight (228) weeks and $2.26 per week for twelve (12) weeks beginning March 16, 1963. Funds grant credit for Worker's Compensation benefits on the amount of the award and the period during which it is payable. The "minimum weekly amount" is $15.00 per week for any week ending on or before January 31, 1965 and $30.00 per week after January 31, 1965.

Mr. Fulmer's lump sum award of $692.86 based on the allowable $15.00 per week amount makes his compensible period from March 15, 1963 to January 31, 1964. He will be granted three-fourths (3/4) year of classified signatory service for 1963 and no credit will be granted for the month in 1964. Mr. Clark requested he be provided with Q & AP–30. This will be mailed with the copy of the Decision on Review.

Based on all evidence in file and that presented at the hearing, applicant will be credited with nineteen and three-fourths (19¾) year of classified service of which sixteen and one-fourth (16¼) years are signatory. As he still does not meet the twenty (20) year classified requirement, his application for pension benefits will remain denied.

s/SUE TURLEY
Hearing Officer

[A.R. 68–72—emphasis supplied]

The Court notes that on review of the initial denial of Mr. Fulmer's application for pension benefits the UMWA Funds substantially receded from its March 4, 1981 position that this coal miner was not due credit for his employment by Daisy Coal Company which was recorded in his initial application. Hearing Examiner Sue Turley observed in her Decision on Review (4th par., A.R. 68) that she had discussed the case with Mr. and Mrs. Fulmer in March 1981 *and had then taken excerpts from payroll records of the Daisy City Coal Company.* She admitted that these excerpts were missing from the UMWA pension case file of Albert Fulmer (A.R. 68). She records (A.R. 68, par. 5):

Appellant had been credited with fifteen and one fourth (15¼) years of classified signatory service. He had not been given credit for three and three fourths (3¾) years of service [form] 1942–1947 because he had not submitted proof of his employment with the Daisy City Coal Company. Appellant had submitted co-workers statements from Herman Wolfe, Ralph Wolfe and Buster Spruell on which all stated Fulmer worked as a truck driver for this company. *Even though Fulmer did not complete and submit the truck driver's questionnaire sent to him, it is the opinion of this hearing officer that appellant performed classified employment for this company.* Appellant will be granted credit for the years on earnings. [Par.] *This hearing officer again reviewed the partial payroll records from the Daisy Coal Company.* The earnings for Mr. Fulmer, shown on these records did not total to as much as was shown on his Social Security earnings record. No additional credit will be granted for the Daisy City Coal Company. [Emphasis supplied]

Hearing Examiner Turley's recorded comment concerning Mr. Fulmer's alleged failure to complete and submit the truck driver's questionnaire sent to him is erroneous. See A.R. 74, letter dated May 14, 1981 from Attorney Charles Tyler Clark to Don C. Bunch: "Please find enclosed the Truck Driver's Questionnaire completed by Mr. Fulmer. We would appreciate you adding it to Mr. Fulmer's file and considering it along with the remainder of the evidence." See executed Truck Driver's Questionnaire dated May 7, 1981, A.R. 88, showing Mr. Fulmer's truck driver employment by Leon Negron, Daisy City Coal Company, from 1941 to 1947.

Hearing Examiner Turley's recorded comment concerning Mr. Fulmer's Social Security earnings record is a reference to A.R. 105–107 (Social Security Itemized Record of Earnings of Albert Fulmer for January, 1937 through the 3rd quarter of 1979). A.R. 105 shows Mr. Fulmer's reporting employer to be Daisy City Coal Company, Route 3, Birmingham, Alabama

from the second quarter of 1941 through the second quarter of 1947 with no reported earnings for the years 1943 and 1944 ("military service"). *A.R. 105 shows no reported earnings for the first quarter of 1941; $3.00 reported earnings for the second quarter of 1941; no reported earnings for the third quarter of 1941; and $98.99 for the fourth quarter of 1941.* This same A.R. 105 shows $96.48 reported earnings for the first quarter of 1942; $148.75 for the second quarter of 1942; $101.70 for the third quarter of 1942; and $125.36 for the fourth quarter of 1942. Obviously, fourth quarter earnings were not reported until the first month of the next succeeding year. The pattern of Mr. Fulmer's reported earnings from Daisy City Coal Company in 1941 is strongly suggestive of Daisy City Coal Company's failure to properly report all of Mr. Fulmer's earnings from his truck driver employment in that year.

Under date of July 20, 1982 Attorney James C. King of the law firm of Wilson and King of Jasper, Alabama by letter of that date to Don C. Bunch, Director, United Mine Workers of America, Health and Retirement Funds, Big Stone Gap, Virginia ("Don C. Bunch") advised that his law firm had taken over the claim of Albert Fulmer for pension benefits. Other pertinent portions of that letter read as follows:

I have reviewed the information available to me from Mr. Fulmer and have found that he has been given 19¾ years of classified service of which 16¼ years are signatory for the twenty year classified with six years signatory requirement for 1950 pension. The records indicate to me that he was not given any credit for the year 1941. Please ascertain for me if he was given any credit for the year 1941. Also, tell me what amount of coal earnings would be required for the year 1941 or any part thereof for him to be given ¼ of a year credit.

I am also interested in your providing me whatever the appropriate procedure is for Mr. Fulmer either reactivating his claim for pension benefits or filing an appeal from the hearing dated July 31, 1981.

Your prompt attention to this request would be greatly appreciated.

[A.R. 58]

On August 20, 1982 Don C. Bunch responded by letter to Attorney James C. King:

Re: Albert Fulmer
SS: 423–16–8834

Dear Mr. King:

This is in reply to your July 20, 1982 correspondence relative to credit awarded Mr. Fulmer for the year 1941.

The amount of coal industry earnings needed for ¼ of credit for 1941 is $182.25. *Mr. Fulmer's earnings, shown on his Social Security Earnings Record for 1941, amounted to $101.99; therefore, no credit was allowed for 1941.*

Mr. Fulmer's appeal hearing, held on June 9, 1981, was the Funds' final administrative action. Once a hearing has been held, a case cannot be reopened unless new evidence relating to the facts in dispute is submitted.

We hope we have provided the information you need.

[A.R. 57—Emphasis supplied]

By letter dated August 26, 1982, Attorney James C. King advised and inquired of Don C. Bunch as follows:

We have new evidence to submit in this case. We have information that some of Albert Fulmer's earnings during the year 1941 were submitted under his father's earnings record.

I am going to take a statement of the former payroll clerk of a Mr. Negron who Albert Fulmer and Albert's father worked for during the year 1941. This person will verify the work arrangements and the payment arrangements for Albert and his father.

Is there any form I need to submit to you to have this case reopened? It appears from my investigation that there is clearly an additional $80.26 worth of earnings for Albert Fulmer during the year 1941. If that is the case and all he needs if [sic] one-quarter of a year according to what you have previously determined in this claim, then he would be entitled to a pension.

Let me know what additionally I need to submit to you.

[A.R. 55]

Attorney James C. King on behalf of Albert Fulmer sent letter dated October 11, 1982 to Don C. Bunch, which read:

Dear Mr. Bunch:

Enclosed is an affidavit from Rose Mary Nail. What apparently happened in this man's mining record was that he and his father and family would work together and all of their time and effort would be billed under the father. If you will note the payroll records, you will see that Albert Fulmer's father routinely drew substantially more money than the majority of the other workers. There were several workers who had these family-type operations.

Please review this matter, and let's discuss it. It seems to be a shame to deny this claim with only one-quarter year credit lacking when it seems obvious what happened.

[A.R. 52]

The Rose Mary Nail affidavit enclosed in Attorney King's October 11, 1982 letter to Don C. Bunch reads:

STATE OF ALABAMA
COUNTY OF JEFFERSON

Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared Rosemary Nail, who after being duly sworn, deposes and says as follows:

My name is Rosemary Nail and I live at Cardiff, Alabama 35041. My telephone number is 205–674–6638. I was born May 10, 1923.

In 1941, I worked in a grocery store owned and operated by Leon Negron. Mr. Negron owned Daisy City Coal Company, and the grocery store provided groceries for the miners who worked in his coal mine. As a clerk in the store, I personally knew Mr. Albert Fulmer and his father. Mr. Albert Fulmer worked with his father at the coal mine for Mr. Negron. During that time period, it was common for families to work together in the coal mines and the father or family head collect all of the monies for the entire family who worked together as a team. Albert Fulmer's father purchased his groceries from the grocery store, and as clerk I sold him his groceries. Albert always came grocery shopping with his father, and his father always paid for the groceries.

It is my understanding that there are no records that Albert Fulmer worked in the mines during this time period. However, in keeping with common practices of the day, the only record of the coal mined by Albert Fulmer would be in the name of his father because of the family team concept that was used.

I am giving this statement of my own free will, and I have been offered nothing of value in return. It is the truth to the best of my ability to remember.

s/Sandra M. Turner
Notary Public

My commission expires: 7–19–86

[A.R. 53]

A handwritten note appears at the bottom of the affidavit above referenced which reads:

Notes: Mr. Fulmer was 19 years old in 1941. Had his own SS # wages reported for Daisy City Coal Co. in 1941.

The Court notes that Mr. Fulmer had his 19th birthday *on May 10, 1941.*

Under date of October 26, 1982 Don C. Bunch notified Albert Fulmer in response to the additional evidence submitted by Attorney James C. King on his behalf by letter:

The additional evidence you submitted in support of your application for pension benefits have been reviewed. No additional credit can be awarded based on the statement of Ms. Nail.

I am sorry a more favorable reply could not be given.

[A.R. 51]

Albert Fulmer died at the age of 61 on December 25, 1983, about 16.79 years shorter than his life expectancy. See Acts of Alabama 1985, Vol. 2, Addendum. He had been fighting for his UMWA pension three years and three months at the time of his death. The immediate cause of death

was "Pulmonary Embolus." The conditions which gave rise to the immediate cause were "Metastatic Carcinoma of the Lungs" and "Pneumoconiosis." (A.R. 49). It is sadly ironic that the disease "Pneumoconiosis" which contributed to Mr. Fulmer's death is a coal miner's disease caused by deposition of large amounts of coal dust in the lungs and typically characterized by ontrilobular emphysema; called also coal-miner's or miner's lung, black phthisis, and miner's phtisis. See Dorland's Illustrated Medical Dictionary, 25th edition, p. 1220. See also § 25–5–170 et seq., Ala. Code 1975.

On February 13, 1984 his widow, Ida Fulmer, applied to the UMWA Funds for a widow's pension, the form of survivor's benefit provided by the UMWA 1950 Pension Plan (A.R. 46–50) (Exhibit B). However, because her husband, Albert Fulmer, was not receiving a UMWA pension at the time of his death, Mrs. Fulmer's application was perfunctorily denied on March 19, 1984 (A.R. 37). Mrs. Fulmer appealed the denial (A.R. 45) and received a hearing on June 12, 1984 (A.R. 24). Her attorney in this administrative appeal was Attorney James C. King, her present counsel of record in this litigation.

It is apparent that the hearing of Mrs. Fulmer's appeal was delayed because of the submitted request of her attorney for additional time within which to secure other evidence (A.R. 41). Attorney King and a representative of the UMWA Funds met on June 14, 1984 at which time plaintiff's attorney presented Daisy City Coal Company payroll records to the UMWA representative for which he (King) claimed contained proof of the additional one-fourth year's time needed by Mr. Fulmer to qualify for the 1950 pension. At this meeting plaintiff's attorney and the UMWA Funds representative reviewed these records. The Funds representative requested additional time to review them. Attorney King agreed to make copies and forward them to the UMWA representative's office in Big Stone Gap, Virginia (A.R. 42). The Administrative Record shows that he did so with dispatch (A.R. 33).

A.R. 38 and 39 represent undated handwritten earnings data compiled in the summer of 1984 by one or more UMWA Funds representatives from the submitted Daisy City Coal Co. 1941 payroll records of Albert Fulmer and his father, Charlie Fulmer. It is undisputed that both men worked for Daisy City Coal Co. during the 1941 year. This portion of the Administrative Record and A.R. 33 show without dispute that the UMWA Funds representatives had in their possession the pertinent 1941 payroll records of Daisy City Coal Co. for about a year prior to the June 12, 1985 hearing of plaintiff's appeal.

The second Affidavit of Rose Mary Nail dated June 24, 1984 was submitted to the UMWA Funds representative by plaintiff's attorney along with his submission of the Daisy City Coal Co. financial records (A.R. 40). This Affidavit reads:

STATE OF ALABAMA
COUNTY OF JEFFERSON

Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared Rose Mary Nail, who after being duly sworn, deposes and says as follows:

My name is Rose Mary Nail, and I live at Cardiff, Alabama 35041. My telephone number is 205–674–6638. I was born May 10, 1923.

The attached documents are copies of portions of payroll record ledgers for the year 1941 for Daisy City Coal Company. I know they are copies of portions of the ledgers because I have seen them and I saw them when they were originally made. I have looked at the originals and they are the same. We have made copies of portions of the ledgers and attached them to this affidavit because we did not want to let the originals out of our possession because they are old, fragile documents and are the only proof for families such as the Fulmer family that people worked for Daisy City Coal Company.

s/ROSE MARY NAIL

Sworn to and subscribed before me this the 25th day of June, 1984.

s/Helen P. Slatsky
Notary Public

My commission expires:
10–8–84
   [A.R. 40]

The "old fragile documents" referred to in the second Nail Affidavit are Plaintiff's Exhibits No. 1 (Daisy City Coal Company Cash Book) and No. 2 (Daisy City Coal Company Time and Payroll Book).

The UMWA Memorandum of Applicant Contact form appearing in the Administrative Record at A.R. 32 and bearing date of July 5, 1984 and the signature of a UMWA Funds representative thereon reflects that the UMWA signatory and one Dale Morris reviewed the payroll ledger which was forwarded by Attorney James C. King to the UMWA Funds Office as proof of additional credit for the year 1941 for Albert Fulmer (A.R. 32). The following extract is taken from that document:

> Upon review of the ledger there is recorded evidence of Albert Fulmer receiving $114.08 during the year 1941, however $3.00 of that amount does appear on his S.S. wage record. $15.53 of the remaining $111.08, Mr. Fulmer rec'd between 7/1/41 & Sept. 15, '41 *does not* appear on his S.S. wage record & the remaining amount of $95.55, although recorded as income *is not* dated as to what month or day Mr. Fulmer rec'd it.
>
> I placed a call to Mr. King's office to inform him of our review. He will return my call.
>    [A.R. 32]

This referenced Administrative Record shows that the UMWA signatory to the July 5, 1984 Memorandum of Applicant Contact (A.R. 32) discussed these findings by phone with Attorney James C. King on or about July 24, 1984 (A.R. 31). Under date of October 26, 1984 the UMWA Funds representative phoned Mr. King inquiring what action he wished to take regarding Mrs. Fulmer. King replied he would appreciate the file being sought for additional credit (A.R. 30). On February 21, 1985 the UMWA Funds representative again called King who advised "to go ahead and schedule the hearing" (A.R. 30).

The UMWA Field Service Office hearing of plaintiff's appeal was held on June 12, 1985 at the UMWA District 20 Office in Birmingham, Alabama. Shirlee Dysart served as Hearing Officer (A.R. 24). On August 9, 1985 the Hearing Officer's Decision on Review was rendered that Albert Fulmer's application for pension remained denied and that plaintiff's application for Death and Survivor Benefits remained denied (A.R. 20–23). This Decision On Review reads as follows:

BIG STONE GAP
FIELD SERVICE OFFICE
Ida Fulmer
Deceased: Albert Fulmer
SS: 423–16–8834

### DECISION ON REVIEW

This is the decision on review of appellant's application for a 1950 Pension Plan Widow's Pension. The application for Survivors' Benefits was filed on February 13, 1984 and was denied on March 19, 1984 because the deceased mineworker was not receiving a 1950 Pension Plan Pension at the time of his death.

Appellant filed a Request for a Hearing on April 20, 1984 and a pre-hearing conference was held on June 14, 1984 in the UMWA District 20 Office in Birmingham, Alabama. The hearing was held on June 12, 1985 at the UMWA District 20 Office.

The appellant contends that her husband was eligible to receive a pension under the 1950 Pension Plan at the time of his death.

The appellant's husband had appealed the denial of his pension and had a hearing on the denial on June 9, 1981. At the hearing, it was established that Mr. Fulmer would be credited with nineteen and three-fourths (19¾) years of classified service of which sixteen and one-fourth (16¼) years were signatory. The Decision of Review of July 31, 1981 states: "This Hearing Officer again reviewed the partial payroll records from the Daisy City Coal Company. The earnings for Mr. Fulmer, shown on these records did not total to as much as was shown on his Social Security Earnings Record. No ad-

ditional credit will be granted for the Daisy City Coal Company." The Hearing Officer did not state what year these payroll records were for, however, from information in the deceased's file it appears that the payroll records were for the year 1942 and totalled $354.42. The Social Security Wage Record shows $472.29 for Daisy City Coal Company for the year 1942.

At the pre-hearing held on June 14, 1984, the appellant, Mrs. Fulmer, submitted copies of some payroll records and an affidavit from Rose Mary Nail stating these were portions of payroll ledgers for the year 1941 for Daisy City Coal Company.

*The original ledger books from which the copies were made were brought to the hearing and they match the copies in the appellant's file.*

Appellant contends that the payroll records submitted, that do not show any date, are for the period July 15, 1941 through September 30, 1941—the time period that no earnings appear on Fulmer's wage record.

The copies of ledger books begin with pay period April 1 to April 30, 1941. Albert Fulmer's name is not listed in this pay period.

The next pay period is April 16 to May 1, 1941. Again, Albert Fulmer's name is not listed. A. Fulmer is listed with earnings of $3.00 for pay period of May 15 to 30. Due to page numbers, I assume this is for the same year, 1941. Also, $3.00 is reported on Albert Fulmer's earnings record from Social Security for the second quarter of 1941.

A. Fulmer is not listed for the pay periods June 1 to 15 or June 15 to 30.

Albert Fulmer received $1.50 for the period July 1 to 15. For July 15 to 31, 1941, Albert Fulmer has $5.05 reported. For the period August 1 to 15, 1941, Albert Fulmer is reported with $2.65. Albert Fulmer is reported with $6.33 for the pay period August 15 to 31.

Albert Fulmer is not listed for the pay periods of September 1 to 15, 1941, September 15 to 30, or October 15 to 31, 1941. There is no pay period of October 1 to 15 in the copies of ledger books. The other Time and Payroll Book begins with the period of July 1 to 15, 1941. Albert Fulmer's name is not listed during this pay period in this book. However, he was listed for this time period in the other Ledger Book with earnings of $1.50 as was noted earlier.

Albert Fulmer is listed on the following pages with income of $9.65, $10.22, $4.64, $14.90, $20.99, and $10.83. These total to $88.22. However, there is no date, month or year, to show when these earnings were received.

*According to the ledger book that has the pay periods dated, Albert Fulmer received $18.53 from April 1, 1941 through October 31, 1941. Only $3.00 is reported on Albert Fulmer's Wage Record during the second quarter of 1941. Therefore, an additional $15.53 should be added to Albert Fulmer's earnings in 1941, for a total of $117.52. The $88.22 earnings which do not show when earnings were received cannot be added in addition to the earnings reported on Social Security in the 2nd and fourth quarters of 1941.*

Appellant further contends that Albert Fulmer worked with his father, Charlie Fulmer, as a team in the year 1941, and that Charlie Fulmer received the pay. Appellant and representative state that this accounts for higher earnings for Charlie Fulmer than most of the other employees.

Rose Mary Nail signed an affidavit on October 7, 1982 stating that in 1941 she worked in a grocery store owned and operated by Leon Negron, who also owned Daisy City Coal Company. She said that the grocery store provided groceries for the miners who worked in Mr. Negron's coal mine. Ms. Nail also stated that during this "time period, it was common for families to work together in the coal mines and the father collect all of the monies for the entire family who worked together as a team ..." "It is my understanding that there are no records that Albert Fulmer worked in the mines during this time period. However, in

keeping with common practices of the day, the only record of the coal mined by Albert Fulmer would be in the name of his father because of the family team concept that was used."

Albert Fulmer did have earnings reported on his behalf by Daisy City Coal Company in 1941. In the second quarter $3.00 was reported and $98.99 was reported in the fourth quarter of 1941. If in 1941 Charlie Fulmer was being paid more earnings because he and Albert Fulmer were working as a team and the father was receiving all the pay, earnings would not have been reported on Albert Fulmer's behalf in the same period. Also, Albert Fulmer was nineteen (19) years old in 1941 and old enough to work in the mines on his own and without his father's consent.

Accordingly, I make the following findings of facts:

(1) Prior to the hearing, appellant's husband had been credited with nineteen and three-fourths (19¾) years of classified service of which sixteen and one-fourth (16¼) years are signatory.

(2) *Appellant has established additional earnings of $15.53 for the year 1941.*

(3) *Earnings on the Social Security Wage Record for Daisy Coal Company in 1941 is $101.99. The additional $15.53 totals $117.52 for the year 1941.*

(4) *$182.25 is needed for one-quarter year's credit in 1941. $117.52 is insufficient earnings for any credit in 1941.*

(5) *The earnings of $88.22 which do not show the month and/or year paid cannot be added to the earnings reported on the Social Security Earnings Record in 1941.*

(6) Appellant has not established that Albert Fulmer's father, Charlie Fulmer, received Albert's pay for working as a team.

(7) Appellant's husband has nineteen and three-fourths (19¾) years of classified service in the coal industry.

(8) Appellant's date of birth is May 10, 1922.

Based on all evidence in the file, appellant has not established that Albert Fulmer was eligible for a pension at the time of his death. The appellant's husband did not meet the twenty (20) years' of classified service requirement of the 1950 Pension Plan. Therefore, his application for pension must remain denied and appellant's application for Death and Survivor's Benefits must remain denied.

s/Shirlee Dysart
Hearing Officer

08-09-85 Date

[A.R. 20–23—Emphasis supplied]

The UMWA formal denial letter appears at A.R. 19. The file was closed on August 9, 1985 (A.R. 18).

■ The August 9, 1985 Decision On Review above referenced (A.R. 20–23) reflects on the first page thereof (A.R. 20) *"that the original ledger books from which the copies were made were brought to the hearing and they match the copies in the appellant's file."* It has been previously noted that the original ledger books referred to and examined by the UMWA Hearing Officer are now before the Court as Plaintiff's Exhibits No. 1 (Daisy City Coal Co. Cash Book) and No. 2 (Daisy City Coal Co. Time and Payroll Book). The documents by all indicia are ancient documents within the purview of Rule 901(b)(8) and Rule 803(16), Fed. Rules of Evidence, and without dispute constitute the only known and available payroll records of the Daisy City Coal Co. for the calendar years 1941, 1942 and 1943, the authenticity of which was established. Moreover, in connection with the handling, processing and determination of the pension applications of Albert and Ida Fulmer the UMWA Funds have to a substantial extent accepted and utilized all portions of these financial records for the calendar years 1942 and 1943 as true and correct business entries of Daisy City Coal Co. made in the regular course of its coal mining business in and for the calendar years

1942 and 1943.[8] Furthermore, the defendant Trustees or their duly authorized representatives have to some lesser extent but still to a substantial extent in connection with their handling, processing and determination of the pension applications of Albert and Ida Fulmer accepted and utilized certain significant portions of these financial records for the calendar year 1941 as true and correct business entries of Daisy City Coal Company made in the regular course of its coal mining business in and for the calendar year 1941.[9] Given these stated facts concerning the Trustees' acceptance and utilization of these ancient documents, given the fact that a careful examination and analysis of Daisy City Coal Co.'s Time and Payroll Book (Plaintiff's Exhibit No. 2) leads to a clear and rational conclusion that this Time and Payroll Book (Plaintiff's Exhibit No. 2) contains separate payroll entries for the three separate calendar years of 1941, 1942 and 1943 with no apparent intermixing of years and given the fact that the $9.65, $10.22, $4.64, $16.99, $14.90, $20.99 and $10.83 separate payroll entries in the Time and Payroll Book (Plaintiff's Exhibit No. 2) regard-

ing Albert Fulmer's earnings totaling $88.72 (referred to in the eighth paragraph of the second page of the August 9, 1985 Decision on Review, A.R. 20–23 at A.R. 21 compiled from Daisy City Coal Co.'s Time and Payroll Book, entries made prior to entries for 1942 calendar year) which appear in what clearly appears to be the 1941 payroll year section of the Time and Payroll Book (Plaintiff's Exhibit No. 2),[10] the Court concludes that each such referenced payroll entry from the Time and Payroll Book (Plaintiff's Exhibit No. 2) constitutes and is competent and admissible evidence and reliable, relevant, trustworthy evidence of Albert Fulmer's additional earnings from Daisy City Coal Co. in the 1941 calendar year *in addition to* his 1941 Daisy City Coal Co. earnings reported on his Social Security Earnings from Daisy City Coal Co. for 1941 (A.R. 105; $3.00 for second quarter; and $98.99 for fourth quarter) and in *addition to* his $15.53 additionally established 1941 Daisy City Coal Co. earnings (A.R. 22; Finding of Fact No. 2; $3.00 for second quarter; $1.50 for third quarter; $5.05 for third quarter; $2.65 for third quarter; and $6.33 for third quarter. Total

**8.** See A.R. 68–72, Decision on Review dated July 31, 1981, wherein Albert Fulmer was granted additional credit for three and three-fourths years of service from 1942–1947 on the basis of excerpts from payroll records of Daisy City Coal Co. supplied by Mr. and Mrs. Fulmer in March 1981 (and thereafter misplaced by the Hearing Officer), co-workers statements, and proof that he was regularly employed in a classified job in the coal industry (Daisy City Coal Co.) immediately prior to entry in service and return to such employment (Daisy City Coal Co.) within 12 months of discharge. See A.R. 20–23, Decision On Review dated August 9, 1985 showing submission to Hearing Officer of original ledger books of Daisy City Coal Co. (Plaintiff's Exhibits No. 1 and No. 2) and extensive UMWA review of ledgers and findings of fact therefrom.

**9.** For instance the Hearing Officer in her August 9, 1985 Decision on Review (A.R. 20–23), third page, Finding of Fact No. 2, found as a fact that *"Appellant has established additional earnings of $15.53 for the year 1941."* This finding was based upon the facts found by the Hearing Officer. See second page of the Decision On Review, ninth paragraph (A.R. 21): "According to the ledger book that has the pay periods dated, Albert Fulmer received $18.53 from April 1, 1941 through October 31, 1941. Only $3.00 is reported on Albert Fulmer's Wage Record during the second quarter of 1941. Therefore an

additional $15.53 should be added to Albert Fulmer's earnings in 1941, for a total of $117.52. *The $88.22 earnings which do not show when earnings were received cannot be added in addition to the earnings reported on Social Security in the 2nd and fourth quarters of 1941."* (Emphasis supplied)

**10.** While the post-hearing, post-denial "after-the-fact" June 9, 1986 affidavit of Charles A. Sickle, UMWA Eligibility Advisor in the Office of Beneficiary Eligibility and Payments, to which is attached a copy of his May 19, 1986 "administrative review of Albert Fulmer's pension file" (including the Daisy City Coal Co. Cash and Payroll books for 1941) seeks to present the Trustees' post-hearing, post-denial "after-the-fact" position that the above referenced entries totaling $88.22 appear to be "store account charges," the Court notes that this alleged factual issue arises almost four years after the Trustees denied Albert Fulmer's application for pension benefits on July 31, 1981 and almost nine months after Ida Fulmer's application for widow's pension benefits was denied on August 9, 1985. Neither UMWA Hearing Examiner Sue Turley (A.R. 68–72) nor UMWA Hearing Examiner Shirlee Dysart (A.R. 20–23) classified or described these entries to be "store account charges."

$18.53, less $3.00 previously reported Social Security Earnings from Daisy City Coal Co. for 1941—$15.53. A.R. 105; A.R. 21, 8th par.; Daisy City Coal Co. Cash Book, Plaintiff's Exhibit No. 1). Moreover, the "pick and choose" concept utilized and followed by the Trustees or their authorized representatives in connection with the findings of fact made by the UMWA Hearing Officers from the Daisy City Coal Co. payroll ledgers (Plaintiff's Exhibits No. 1 and No. 2) submitted both by Albert Fulmer during his lifetime and by his widow, Ida Fulmer, following his death appear to have been wholly dependent upon the individual unguided discretion of the party holding the position of UMWA Hearing Officer from time to time as hearings were held and decisions rendered.

In sum, the Court finds and determines that this administrative record, as supplemented, contains admissible and competent evidence that from the time Albert Fulmer applied to the defendant Trustees or their authorized representatives on September 24, 1980 for a pension based on service under the UMWA 1950 Pension Plan (Exhibit B) he had earned $205.74 ($3.00 plus $98.99 plus $15.53 plus $88.22 = $205.74) in wages from Daisy City Coal Co. in the 1941 calendar year and was the therefore due one-fourth (¼) year credit by the Trustees for the 1941 calendar year under the terms and provisions of the 1950 Plan. Thus, this administrative record, as supplemented, contains admissible and competent evidence and reliable, relevant, trustworthy evidence that as of the September 24, 1980 date of his application for pension benefits Albert Fulmer had "[a]ttained the age of fifty-five (55) years and ... completed twenty (20) years of credited service, including the re-

quired amount of signatory service set forth in Article IV(c)(4) ..." [See Article II.B of 1950 Pension Plan, p. 6]. Moreover, given this last finding and determination, the administrative record, as supplemented, contains admissible and competent evidence and reliable, relevant, trustworthy evidence that as of the death of Albert Fulmer on December 25, 1983 he had been entitled to receive pension benefits under the 1950 Pension Plan continuously from the time of his application therefor on September 24, 1980 and consequently his surviving widow, Ida Fulmer, was entitled to receive widow's pension benefits under the 1950 Pension Plan from the date of her application therefor on February 13, 1984 with retroactive benefits from the date of death of her husband to the date of her application.[11]

There is no evidence in this administrative record, as supplemented, that the Trustees or their authorized representatives uniformly granted service credits to applicants for pension benefits under the 1950 Pension Plan or other similar plans only on the basis of the earnings of the applicant as shown on the applicant's official Social Security Itemized Statement of Earnings. As a matter of fact, the record shows without dispute that the Trustees or their authorized representatives early on receded from the position that Albert Fulmer's credited earnings could only be established by his Social Security Itemized Statement of Earnings. Moreover, there is no evidence in this administrative record, as supplemented, of the Trustees or their authorized representatives denying an application for pension benefits under the 1950 Pension Plan or other similar plan

---

11. The Court does not address the issue of entitlement of Albert Fulmer for pension benefits under the 1950 Pension Plan from the date of his actual eligibility therefor to the time of his death nor the issue of plaintiff Ida Fulmer's entitlement to those benefits as Albert Fulmer's surviving widow. The Court, however, notes its clear understanding from counsel of record for the parties that in event this Court rules in favor of plaintiff Ida Fulmer in this action the parties will thereafter and with dispatch mutually agree on the total amount of pension benefits due to be paid the surviving widow, which shall include the pension benefits due Albert Fulmer from the date of his first eligibility therefor to the time of his death and the widow's pension benefits due plaintiff from the date of death of her husband to the date of the mutually agreed calculation. In addition, by mutual agreement the parties have agreed to agree on the amount of widow's pension benefits to be paid plaintiff in the future by the 1950 Pension Plan. The Court's understanding of the parties' agreement is, of course, subject to the Trustees' right to appeal from an adverse ruling.

under the same or substantially similar factual circumstances shown by this administrative record, as supplemented. Finally, there is no evidence in this administrative record, as supplemented, that an alternative decision to grant both Albert Fulmer's and Ida Fulmer's pension applications would require inappropriate or unanticipated costs to the 1950 Pension Plan so as to potentially limit resources available to proper beneficiaries of the 1950 Plan.[12]

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction of this ERISA civil action under 29 U.S.C. § 1132(e).[13] For purposes of ERISA a cause of action does not accrue until an application is denied. *Paris v. Profit Sharing Plan For Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir.1981), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).[14] The causes of action here came into existence when the Trustees or their authorized representatives denied Albert Fulmer's requests for benefits and Ida Fulmer's requests for widow's benefits. There is support for that proposition. *Id.* at 361.

2. According to the law of the Eleventh Circuit Court of Appeals and the binding precedential law of the former Fifth Circuit, the actions of the trustees in the administration of pension plans must be sustained on district court review unless plaintiff can prove such activities have been artibrary *or* capricious. *Bayless v. Central States, Southeast and Southwest Ar-*

eas *Pension Fund*, 602 F.2d 97, 99 (5th Cir.1979); *accord: Paris v. Profit Sharing Plan For Employees of Howard B. Wolf, Inc., supra;* *Sharron v. Amalgamated Ins. Agency Services, Inc.*, 704 F.2d 562, 564 (11th Cir.1983); *Griffis v. Delta Family-Care Disability, cert. denied*, 467 U.S. 1242, 104 S.Ct. 3514, 82 L.Ed.2d 823 (1984); *Helms v. Monsanto Co., Inc.*, 728 F.2d 1416, 1417 (11th Cir.1984);[15] *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1520–21 (11th Cir.1985); and *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495 (11th Cir. 1987); *Deak v. Masters, Mates and Pilots Pension Plan*, 821 F.2d 572, 579 (11th Cir. 1987) Other circuits have articulated the proper standard of review in somewhat different language. For instance, in *Elser v. I.A.M. Nat. Pension Fund*, 684 F.2d 648, 654 (9th Cir.1982), a case recently cited approvingly by the Eleventh Circuit in *Deak, Masters, Mates and Pilots Pension Plan, supra*, in its discussion of "Arbitrary and Capricious Conduct," the Ninth Circuit Court of Appeals enunciated the proper ERISA standard of review in the following manner:

The actions of trustees are subject to the same standard of review under the ERISA's fiduciary provisions as they are under the LMRA. *Gordon v. ILWU-PMA Benefit Funds*, 616 F.2d 433, 438 (9 Cir.1980). (footnote omitted) Therefore the decisions of the trustees "may be reversed only where they are arbitrary, capricious or made in bad faith, not supported by substantial evidence, or errone-

---

**12.** Counsel of record for the defendant Trustees stated of record at the final bench hearing: "This is one of the closest cases I have ever seen."

**13.** (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

**14.** The Eleventh Circuit, in the en banc decision of *Bonner v. City of Pritchard*, 661 F.2d 1206,

1209 (11 Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**15.** The *Helms* court, 728 F.2d at 1420–21, inadvertently used the phraseology "... decision must be upheld on review unless it is arbitrary *and* capricious," *citing Sharron v. Amalgamated Ins. Agency Services, Inc.*, 704 F.2d 562, 564, and *Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 99, both of which use the phrase "arbitrary or capricious," that is, in the disjunctive. *Anderson v. Ciba-Gligy Corp.*, 759 F.2d 1518, 1520–21 (11th Cir.1985) and *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495 (11th Cir.1987), appear to have repeated the inadvertent [conjunctive] error of *Helms* by using the phraseology "arbitrary *and* capricious."

ous on a question of law." *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9 Cir.1976). (footnote omitted) See also *Aitken v. IP & GCU-Employer Retirement Fund,* 604 F.2d 1261, 1264 (9 Cir.1979). (footnote omitted)

This appears to be substantially the same standard of review mandated for ERISA cases by both the Eleventh Circuit and the former Fifth Circuit Court of Appeals except that these latter cases have not used the phraseology *"or made in bad faith, not supported by substantial evidence, or erroneous on a question of law"* in their articulation of the specific standard. The Eleventh Circuit in *Sharron v. Amalgamated Ins. Agency Services, Inc., supra,* 704 F.2d at 564, held that the district court erred by relying in part on more lenient standards from other circuits. This Court will adhere strictly to the "arbitrary and capricious" standard.

3. In *Harris v. Pullman Standard, Inc., supra,* the Eleventh Circuit affirmed the action of the district court granting plaintiff's motion for summary judgment in a case where former plaintiff employees brought an action seeking severance pay when their employer terminated its employment benefits policy by selling its manufacturing plant to another corporation. The district court found that Pullman's interpretation of its policy was arbitrary and capricious. The Eleventh Circuit in its affirmance observed, 809 F.2d at 1497–98:

> The administrator of an employment benefit plan cannot deny benefits to employees in an arbitrary and capricious manner. *Griffis v. Delta Family-Care Disability,* 723 F.2d 822, 825 (11th Cir.1984), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3514, 82 L.Ed.2d 823 (1984). The courts, in reviewing such decisions, must weigh the following factors to determine if the denial was arbitrary and capricious: (1) uniformity of construction; (2) "fair reading" and reasonableness of that reading; and (3) unanticipated costs. The following three additional factors are evidence of the plan administrator's good faith: (1) internal consistency of a plan under the interpretation given by the administrator or trustees; (2) any

relevant regulations formulated by the appropriate administrative agencies; and (3) factual background of the determination by a plan and any inferences of lack of good faith. *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir. 1982). Using these guidelines, the district court found that Pullman's refusal to pay the severance benefits to the plaintiffs was arbitrary and capricious for four reasons.

The Eleventh Circuit's discussion and approval of the four reasons given by the district court for its holding that Pullman's failure to pay severance pay to the plaintiffs was arbitrary and capricious is summarized as follows: (1) The reviewing court is guided by the language of the policy and any employer interpretation that contradicts the clear wording of the policy has to be arbitrary and capricious (Pullman failed to follow the policy's two-part test for eligibility for severance pay); (2) The employer cannot add after-the-fact substantive policy conditions to prevent applicants from receiving benefits under the employer's employment benefits policy. Any such interpretation by an employer is arbitrary and capricious (Pullman required plaintiffs to be unemployed in order to receive severance benefits, even though the plan did not specify this as a condition precedent); (3) Inconsistency by the employer in the interpretation of its benefit plan may, under proper circumstances, be found by a reviewing court to be arbitrary and capricious (the district court here determined that Pullman was inconsistent in interpreting its benefits plan with respect to its terminated employees who were and were not offered jobs by the purchasing corporation); and (4) While procedural violations by an employer do not generally entitle an applicant for employment benefits to substantive relief, nevertheless the quantity of an employer's procedural violations may work a substantive harm (in this case, the unavailability of the policy for the great number of the Pullman employees and the complete lack of any formal claims procedure in addition to Pullman's interpretation of its policy proved that Pullman had acted

arbitrarily and in bad faith when interpreting and implementing its policy).

4. The Court finds and determines as a matter of law that those portions of the ancient document labeled Daisy City Coal Co. Time and Payroll Book (Plaintiff's Exhibit No. 2) offered in the Fulmer-UMWA hearings to prove the establishment of a total of $88.22 in additional earnings by Albert Fulmer from Daisy City Coal Co. in the 1941 calendar year were competent and admissible evidence and reliable, relevant, trustworthy evidence for the purpose offered and that the rejection by the Trustees or their authorized representatives of this proferred critical evidence in the Fulmer-UMWA pension benefit hearings, considered against the fact that the UMWA Hearing Examiners admitted and accepted a companion ancient document (Daisy City Coal Co. Cash Book, Plaintiff's Exhibit No. 1) as competent and admissible and reliable, relevant, trustworthy evidence proving the establishment of Albert Fulmer's additional earnings from Daisy City Coal Co. in the calendar year 1941 in amount of $15.53 (A.R. 20–23 at A.R. 25) and also admitted and accepted the Daisy City Coal Co. Time and Payroll Book (Plaintiff's Exhibit No. 2) as competent and admissible evidence and as reliable, relevant, trustworthy evidence proving Albert Fulmer's established earnings from Daisy City Coal Co. in the calendar year 1942 and subsequent years after his return from military service (A.R. 68–72; A.R. 20–23), was arbitrary and capricious, that is, without just cause based upon the law.[16] Rule 803(16), Fed.R. of Evidence, recognizes that

statements in a document at least twenty years old whose authenticity is established may be admitted as truth of the facts recited. Documents of the requisite age, coming from proper custody and free of a suspicious appearance are admissible in evidence without direct proof of the execution. This is the ancient document rule of authenticity which is now incorporated in Rule 901(b)(8), Fed.R. of Evidence. See Weinstein's Evidence, Vol. 4, ¶ 804(16)(01). See also *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir.1961) (Admission in evidence of a 58-year old newspaper account of a fire in the clock tower of the Selma, Alabama courthouse was within the federal district judge's discretion on the ground that the account was trustworthy, necessary, relevant and material to the issue whether the collapse of the clock tower was due to lightning).

While these erroneous evidentiary rulings on the part of the UMWA Hearing Examiners, obviously ratified and confirmed by other representatives of the Trustees occupying a higher status in the UMWA hierarchy, may not precisely fit into the contours of the *Dennard v. Richards Group, Inc.*[17] factors which the Eleventh Circuit in *Harris v. Pullman Standard, Inc.*, 809 F.2d at 1498, ruled that the courts in this circuit must weigh to determine if the plan administrator's or trustees' denial of benefits was arbitrary and capricious, this Court does not perceive that the law of this Circuit precludes a district court from considering other proper factors in

---

**16.** The phraseology "arbitrary *and* capricious" is defined in Black's Law Dictionary, 5th ed., at p. 96: "Characterization of a decision or action taken by an administrative agency or inferior court meaning willful and unreasonable action without consideration *or in disregard of facts without determining principle.*" (emphasis supplied) On this same page of Black's Law Dictionary the word "arbitrary" is defined: "Means in an "arbitrary" manner, as fixed or done capriciously or at pleasure. Without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic; *Corneil v. Swisher County,* Tex.Civ.App. (1935), 78 S.W.2d 1072, 1074.

Without fair, solid, and substantial cause; that is, without cause based upon the law, *U.S. v. Lotempio,* D.C.N.Y., 58 F.2d 358, 359; not governed by any fixed rules or standard. Ordinarily "arbitrary" is synonymous with bad faith or failure to exercise honest judgment and an arbitrary act would be one performed without adequate determination of principle and one not founded in nature of things." Webster's Ninth New College Dictionary at p. 204 defines "capricious": "governed or characterized by caprice: impulsive—unpredictable." "Whim" is shown to be a synonym. "Caprice" is defined at p. 204: "a disposition to do things impulsively."

**17.** 681 F.2d 306, 314 (5th Cir.1982).

making such determination, consistent, of course, with Eleventh Circuit admonitions in ERISA plan benefit cases such as *Sharron v. Amalgamated Ins. Services, Inc.*, *supra*, 704 F.2d at 564, wherein it was held that the district court erred by relying in part on more lenient standards from other circuits. Moreover, this Court in this case has carefully weighed the enumerated *Harris* factors one by one. The *"uniformity of construction"* factor appears applicable only to the construction of the terms and provisions of the plan by the employer. The *"fair reading" and reasonableness of that reading* factor simply is not applicable to the facts of this case. The "unanticipated costs" factor could be considered in the abstract but the evidence in the administrative record, as supplemented, together with the oral arguments of counsel at the final bench hearing and in brief (resounding with silence re "unanticipated costs"), does not warrant a consideration of this factor from an evidentiary standpoint. Moreover, the Court in reaching its decision that the above referenced evidentiary ruling of the Trustees or their authorized representatives was arbitrary and capricious, that is, without cause based on law, has further carefully considered and weighed the three additional factors which the Eleventh Circuit has stated are evidence of the plan administrator's good faith. *"Internal consistency of a plan under the interpretation given by the administrator or trustess"* (factor # 1, good faith test) appears to refer to the administrator's or trustees' consistent or inconsistent interpretation of the terms and provisions of the plan as was involved in *Harris v. Pullman Standard, Inc.* but not here. *"Any relevant regulations formulated by the appropriate administrative agencies"* (factor # 2, good faith test) obviously is inapplicable under the facts of this case. There is no evidence regarding any relevant regulations in this record. Finally, a weighing of the factor *"factual background of the determination by a plan and any inferences of lack of good faith"* (factor # 3, test of good faith) may arguably be said to reasonably produce a rational conclusion by this reviewing court that

the evidentiary factual background of the Hearing Examiners' rejections of that portion of the ancient document labeled Daisy City Coal Co. Time and Record Book offered for the purpose of establishing $88.22 additional earnings by Albert Fulmer from Daisy City Coal Co. in the calendar year 1941 shows erroneous evidentiary rulings without cause based upon the law to such an extent that it can be characterized as lack of good faith on the part of the Hearing Examiner. It is this Court's considered conclusion, however, that a weighing of this last referenced good faith factor on the basis of the administrative record, as supplemented, does not produce a finding of lack of good faith on the part of the Hearing Examiners in connection with their referenced evidentiary rulings which were not only erroneous but devastating to the case of the pension applicant Albert Fulmer and to the case of the widow's pension application filed by Ida Fulmer after her husband's death. The lack of rationality for these critical rulings, particularly in light of the Hearing Examiners' acceptance of this ancient document as competent and admissible evidence establishing other critical earnings in 1942 and in subsequent calendar years and their acceptance of the companion ancient document (Daisy City Coal Co. Cash Book) as competent and admissible evidence establishing additional 1941 earnings by Albert Fulmer from Daisy City Coal Co., in light of the fact that such erroneous rulings appear to be wholly dependent upon the individual, unguided discretion of the party holding the position of UMWA Hearing Examiner as hearings were held from time to time and decisions rendered, and in light of the gravity of such erroneous rulings which left the applicants ¼ year shy of the mark, dictates the holding of this Court that these referenced erroneous evidentiary rulings of the Trustees or their authorized representatives were as a matter of law arbitrary and capricious under the law of this circuit. The district courts have been instructed that federal common law governs this action. *Paris v. Profit Sharing Plan, Inc.*, *supra*, 637 F.2d at 361. This Court is therefore guided by *Helms, supra*, 728

F.2d 1420, wherein the Eleventh Circuit observed:

> There is no particular provision in ERISA nor could we find any federal case which specifically dealt with the issue here presented. However, under ERISA's legislative scheme, this court is empowered to formulate rules of law to govern various aspects of the employee benefit field. As Congress pointed out, "[I]t is also intended that a body of law will be developed by the courts to deal with the issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 515, 751 (daily ed. August 22, 1974). Yet, in formulating these laws courts must be guided by the general policies underlying ERISA. The general objective of this Act is to increase the number of individuals in employer-financed benefit plans. Congress wanted to assure that those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions or lack of sufficient funds. H.R.Rep. No. 93–807, 93rd Cong., 2nd Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4670, 4676–77.

In reaching the conclusions and making the findings and determinations above, the Court has given no credence to the evidence submitted on behalf of Albert Fulmer concerning the father-son team concept allegedly utilized by some families working for Daisy City Coal Co. in the calendar year 1941 with the father being paid all family earnings (First Affidavit of Rose Mary Nail, A.R. 53). Counsel for plaintiff conceded this evidentiary issue in his oral argument presented of record at the final bench hearing.

An appropriate order will be entered vacating and setting aside the July 31, 1981 and August 9, 1985 Decisions on Review and any subsequent affirmances by higher UMWA Funds authorities and directing and requiring the defendant Trustees to take with dispatch the necessary remedial actions granting the pension based on service to which Albert Fulmer was entitled pursuant to his application therefor and further granting to plaintiff Ida Fulmer the widow's pension to which she was and is now entitled under her widow's application for pension benefits, all under the 1950 Pension Plan.

■ Plaintiff claims a reasonable attorney's fees and costs of action under 29 U.S.C. § 1132(g)(1) which states:

> in any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The Eleventh Circuit has recently considered the ERISA attorney's fee issue in *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.*, 817 F.2d 1528 (11th Cir.1987). Therein the Court states:

> The five factors to be considered in awarding attorney's fees under ERISA are:
>
> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

quoting two Ninth Circuit cases. Since plaintiff in this case has prevailed significantly, the Court is of the opinion after consideration of the five factors above quoted that plaintiff is due to be awarded an attorney's fee and costs in this ERISA litigation. This issue, however, is RESERVED to enable the parties to mutually agree on an reasonable attorney's fee and costs. If this issue cannot be resolved by agreement of the parties, counsel of record for plaintiff is directed to file verified motion for an award of attorney's fees and costs in the Office of the Clerk no later than 30 days from the date hereof, together with itemized time records and other supporting data. An evidentiary hearing will be held thereafter with dispatch.

## ORDER

In conformity with the Memorandum of Decision entered contemporaneously in the above entitled ERISA civil action, it is

ORDERED, ADJUDGED, DECREED and DECLARED that on the basis of a review of the administrative record, as supplemented, and law applicable thereto the UMWA Health and Retirement Funds Decision On Review dated July 31, 1981 denying on review the denial of Albert Fulmer's application (§ 423–16–8834) for pension benefits under the 1950 Pension Plan and all previous and subsequent denials of such application by the defendant Trustees or their authorized representatives and the UMWA Health and Retirement Funds Decision On Review dated August 9, 1985 denying on review the denial of the application of Ida Fulmer in her capacity as the surviving widow of Albert Fulmer (§ 423–16–8834) for a 1950 Pension Plan Widow's Pension and all previous and subsequent denials of such application by the defendant Trustees or their authorized representatives are each hereby VACATED and SET ASIDE as arbitrary and capricious denial of pension benefit decisions and that the defendant Trustees or their authorized representatives, and all persons acting in concert with them in the administration, management and operation of the 1950 Pension Plan, are hereby ENJOINED and DIRECTED to forthwith take such remedial action as is necessary, proper and required to retroactively grant each such above referenced application for pension benefit under the 1950 Pension Plan in conformity with the terms and provisions thereof consistent with the declared establishment by or on behalf of Albert Fulmer that as of the date of his application for pension benefits under the 1950 Pension Plan he had attained the age of fifty-five (55) years and completed twenty (20) years of credited service, including the required amount of signatory service set forth in Article IV(c)4.

It is further ORDERED that the costs of this action are taxed against the defendant Trustees in their respective fiduciary capacities. And it is further

ORDERED that the issue of an award of attorney's fees and costs to plaintiff Ida Fulmer under 29 U.S.C. § 1132(g)(1) is hereby RESERVED for later determination by the Court in event the parties hereto are unable or unwilling to mutually agree with respect to a reasonable attorney's fees and costs for plaintiff to be promptly paid by the defendant Trustees in their respective fiduciary capacities.